UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : : : | MDL NO. 1871 07-md-1871 |
| THIS DOCUMENT RELATES TO: | : : | |
| *William B. Brown v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline* | : : : | 2:09-cv-00809 |
| *Cornelio Martinez, et al. v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : : : | 2:08-cv-05847 |

MEMORANDUM AND ORDER

RUFE, J.                                                                                                              June 17, 2009

Presently before the Court are Motions to remand the two above-captioned individual actions to the state courts in which they were originally filed.[1]  These cases have been transferred to a multidistrict litigation ("MDL") docket organized in this Court that was established[2] to permit coordinated pretrial proceedings in federal cases that "arise from allegations that certain diabetes drugs manufactured by [Defendant SmithKlineBeecham Corp. ("GSK")] — Avandia and/or two sister drugs containing Avandia (Avandamet and Avandaryl)[3] — cause an increased risk of heart attack and other physical injury, and that GSK failed to provide adequate warnings concerning that risk."[4]

---

[1] <u>Martinez</u> Mot. to Remand [Doc. No. 305 on MDL Master Docket]; <u>Brown</u> Mot. to Remand [Doc. No. 331 on MDL Master Docket].

[2] The MDL was established by the United States Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407.  The MDL was assigned to this Court in October, 2007.

[3] Hereinafter, the Court refers to Avandia, Avandaryl and Avandamet collectively as "Avandia".

[4] October 16, 2007 Transfer Order of the United States Judicial Panel on Multidistrict Litigation, at *2 [Doc. No. 1 on MDL Master Docket].

# I.  BACKGROUND

Plaintiffs in the instant cases bring strictly state law claims against GSK and, in the case of <u>Cornelio Martinez, et al. v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline and Carmen Hoss</u>, No. 2:08-cv-05847 ("<u>Martinez</u>"), against GSK sales representative Carmen Hoss ("Hoss") as well.  Each action was filed in state court, removed to federal court on an assertion of diversity and federal question jurisdiction, and then transferred to this MDL.  Prior to transfer, a motion to remand was filed in each action in the transferor federal district court.  After transfer, each Motion was re-filed or re-noticed here.  Once briefing was completed, the Court heard oral argument on the Motions on April 17, 2009.  The Motions are now ripe for disposition.

The Court begins with a brief recitation of the factual and procedural background of each case, followed by a review of the applicable law, before ruling on the Motions at hand.

### A.  <u>Martinez, et al.</u>, 2:08-cv-05847 (New Mexico)

This action was originally filed in the First Judicial District Court for the State of New Mexico, Rio Arriba County.  Plaintiffs Cornelio Martinez, David Padilla and Mary Ponce (collectively, "Plaintiffs") are citizens of New Mexico.  Each brings identical state law claims against named defendants GSK and Carmen Hoss ("Hoss") (defendants collectively, "Defendants").  The causes of action asserted are: Negligence; Negligent Failure to Adequately Warn; Negligence *Per Se*; Negligent Misrepresentation; Breach of Express Warranty; Breach of Implied Warranty; Strict Products Liability – Defective Design; Strict Products Liability – Manufacturing and Design Defect; Strict Products Liability – Failure to Adequately Warn; Fraudulent Misrepresentation; Deceit by Concealment and Other Unfair Practices in violation of §§ 57-12-1 – 22, New Mexico Statutes Annotated; Unjust Enrichment; and Loss of Consortium.

GSK is a pharmaceutical corporation incorporated under Pennsylvania law with

its principal place of business in Pennsylvania.[5] GSK designed and developed Avandia, and currently makes and markets the drug. According to the Martinez Complaint, Hoss is a citizen of New Mexico who at all material times "worked for GSK as a detailer and was engaged in the business of promoting, marketing, distributing, and/or selling Avandia in New Mexico."[6] After GSK and Hoss accepted service of process, GSK removed the action with Hoss's consent to the United States District Court for the District of New Mexico on July 21, 2008, asserting both diversity and federal question jurisdiction. The action was transferred from that court to this MDL on December 17, 2008.

In their Motion, Plaintiffs argue the case must be remanded pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. In particular, they argue that their claims do not implicate sufficiently substantial questions of federal law to support federal question jurisdiction and that there is not complete diversity of citizenship between the parties because Plaintiffs and Hoss are citizens of New Mexico.[7]

As to the former contention, GSK originally responded that federal question jurisdiction exists over this action because Plaintiffs' exclusively state law claims raise substantial questions of federal law. In particular, GSK asserted that federal question jurisdiction exists because "Plaintiffs' Second Cause of Action, 'Negligence – Failure to Warn,' requires construction and application of the Federal Food, Drug and Cosmetic Act ("FDCA")[8] and

---

[5] The Martinez Complaint lists Pennsylvania as GSK's principal place of business, and GSK also claims Pennsylvania as such.

[6] Not. Removal Ex. B ¶¶ 15, 16 ("Martinez Complaint") [Doc. No. 1 on Individual Case Docket].

[7] Plaintiffs do not that argue removal is prohibited by the "forum defendant rule" of 28 U.S.C. § 1441(b), which bars removal premised on diversity jurisdiction if any "properly joined and served" defendant is a citizen of the forum state, as Hoss is here.

[8] 21 U.S.C. § 301 et seq. ("FDCA").

implementing federal regulations, which govern approval of prescription drugs and regulate prescription drug manufacturers' public and promotional statements, including all aspects of warnings and labeling."[9]  In a Memorandum and Order dated February 25, 2009, the Court ruled on seventeen remand Motions filed in this MDL that were contested by GSK, and in which GSK forwarded essentially the same theory regarding federal question jurisdiction as that presented here.[10]  In that Memorandum, the Court considered and rejected GSK's theory, deciding that while some of the relevant plaintiffs' state law claims referred to or implicated the FDCA, they did not do so to such an extent or in such a fashion as would give rise to federal question jurisdiction.[11]  In its briefing in the instant matter, GSK has acknowledged that the reasoning of the Court's prior Memorandum governs and disposes of the issue of federal question jurisdiction initially raised herein.[12]  The Court accordingly deems GSK's argument as to the existence of federal question jurisdiction in this matter to be withdrawn.

With respect to diversity jurisdiction, GSK notes that Plaintiffs and Defendant Hoss are New Mexico citizens, but contends that the citizenship of Hoss must be ignored in the diversity analysis because she was fraudulently joined as a party.  According to GSK, under New Mexico law drug company "detailers," or sales representatives, may not face liability for the torts asserted by Plaintiffs.  GSK argues Plaintiffs named Hoss not to pursue a judgment against her but as a sham designed to thwart federal jurisdiction.  If Hoss's New Mexico citizenship is

---

[9] Def.'s Resp. to Martinez Pls.'s Mot. to Remand, at 12 (citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005)) ("Martinez Def.'s Resp.") [Doc. No. 325 on MDL Master Docket].

[10] Mem. and Order of Feb. 25, 2009 [Doc. No. 352].

[11] Id. at 27-34.

[12] See Def.'s Sur-reply, at 2 n.2 (noting that, after this Court's February 25, 2009 decision, the "only remaining issue before this Court" in the Martinez remand matter is whether diversity jurisdiction exists).

ignored, the parties are completely diverse, and no other bar to federal jurisdiction exists.

### B. *Brown*, 2:09-cv-00809 (North Carolina)

Plaintiff, a citizen of North Carolina, filed this action in the Superior Court of Durham County, North Carolina, on November 10, 2008. Plaintiff's Complaint asserts state law claims against GSK. On December 8, 2008, GSK removed the action to the United States District Court for the Middle District of North Carolina on the basis of both federal question and diversity jurisdiction. The case was subsequently transferred to this MDL on January 9, 2009.

Plaintiff moves for remand for lack of subject matter jurisdiction. For reasons noted above, the Court focuses on whether diversity jurisdiction exists over this action. Plaintiff claims the parties are non-diverse, asserting that, for purposes of the diversity analysis, GSK is a citizen of both Pennsylvania and North Carolina. GSK counters that it is a citizen of Pennsylvania only, such that the parties are diverse and the requirements for subject matter jurisdiction, satisfied.

## II. DISCUSSION

### A. Legal Standard

Disposition of the instant motions is governed by the federal removal statute,[13] which, as a general matter, is to be construed narrowly, with courts resolving "all doubts . . . in favor of remand."[14] Under 28 U.S.C. § 1441(a), a defendant may remove an action brought in state court if it could have been brought in federal court in the first instance. As relevant at present, federal district courts have such original jurisdiction to hear civil actions involving an

---

[13] 28 U.S.C. §§ 1441 - 1453. As an MDL court, the Court applies interpretations of federal law of the Court of Appeals for the Third Circuit, in which it sits. See Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993); In re Korean Air Lines Disaster, 829 F.2d 1171, 1174 (D.C. Cir. 1987); In re Diet Drugs Litigation, 294 F. Supp. 2d 667, 672 (E.D. Pa. 2003).

[14] Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).

amount in controversy in excess of $75,000 and opposing parties who are citizens of different states ("diversity jurisdiction").[15] Complete diversity of citizenship between all plaintiffs and defendants is a necessary element of diversity jurisdiction. If at any time a federal court finds that it lacks subject matter jurisdiction over a removed action, it must remand the action to state court.[16]

*B. Martinez*

As noted above, the remaining issue in this Motion is whether Carmen Hoss was joined as a party defendant so that Plaintiffs could pursue a judgment against her, or solely in order to prevent removal on the basis of diversity jurisdiction. If the former is found to be the case, then as a New Mexico citizen, Hoss's presence in the matter destroys party diversity and any basis for subject matter jurisdiction. But if the latter appears, that is, if Hoss was "fraudulently joined," then the Court may ignore Hoss's citizenship in the diversity analysis and exercise jurisdiction.

"The doctrine of fraudulent joinder prevents a plaintiff from joining a non-diverse defendant 'with no real connection to the controversy' to defeat federal removal jurisdiction."[17] Because the "right of removal cannot be defeated by a fraudulent joinder of a resident defendant," a district court may disregard the citizenship of any defendant so joined when assessing its jurisdiction to adjudicate a removed case.[18]

---

[15] 28 U.S.C. § 1332(a)(1). It is undisputed that the actions presently at issue involve amounts in controversy in excess of $75,000.

[16] 28 U.S.C. § 1447(c).

[17] In re Fosamax Prods. Liability Litig., MDL No. 1789, 2008 WL 2940560, at *3 (S.D.N.Y. July 29, 2008) (quoting Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 460-61 (2d Cir. 1998)).

[18] Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921); In re Diet Drugs Litig., 294 F. Supp. 2d at 672.

Under the test established by the Court of Appeals for the Third Circuit, a finding of fraudulent joinder is appropriate "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment."[19]  A court assesses a claim in these regards in light of the requirements of state law.  A claim is colorable if it is not "wholly insubstantial and frivolous" under the relevant law.[20]  With respect to a claim's factual basis, a "limited piercing of the allegations to discover fraudulent joinder" may be appropriate.[21]  The "limit[ation]" is significant, however, with the permissible inquiry being less probing than the factual review a district court conducts in deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[22]

The burden of demonstrating that a defendant was fraudulently joined rests with the party making the charge.[23]  The burden is a heavy one.[24]  A plaintiff's failure to adequately plead a viable cause of action against the defendant in question must be "obvious according to the settled rules of the state."[25]  In the assessment, "[a] district court must resolve all contested issues of substantive fact . . . and . . . any uncertainties as to the current state of controlling substantive law in favor of the plaintiff."[26]  Ultimately, "if there is even a possibility that a state

---

[19] Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 32 (3d Cir. 1985) (quotation omitted).

[20] Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992).

[21] Boyer v. Snap-On Tools Corp., 913 F.2d 108, 112 (3d Cir. 1990).

[22] Batoff, 977 F.2d at 852.

[23] Boyer, 913 F.2d at 111.

[24] Id.

[25] Id. at 111-112.

[26] Id. at 111.

court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."[27]

As we have seen, Plaintiffs bring thirteen counts, based on thirteen separate causes of action under New Mexico law, against GSK and Hoss,[28] and if one of the claims against Hoss is colorable, then her joinder was not fraudulent. GSK argues that none of the claims is colorable for a variety of reasons. First, it contends Plaintiffs' pleadings fail to provide factual allegations necessary to support claims that Hoss should have known about Avandia's purported risks and that, absent such allegations, Hoss is immune from liability for acts done in the course and scope of her employment with GSK. Next, GSK argues Plaintiffs' claims based on inadequate warnings by Hoss are barred by the "learned intermediary" doctrine. Third, GSK asserts that Plaintiffs' warranty claims against Hoss fail because as a matter of law Hoss is not a supplier or seller of Avandia. Fourth, it asserts that Plaintiffs' fraud claims fail as pleaded with insufficient particularity, and fifth, it contends that Plaintiffs' claims under the New Mexico Drug, Device and Cosmetic Act fail because the Act does not provide for a private right of action.

Taking GSK's arguments in order, the Court notes that the Complaint includes the following allegations as to Hoss:

This is an action to recover damages for personal injuries sustained by the

---

[27] Id. (quoting Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983)).

[28] The causes of action are: (1) Negligence; (2) Negligent Failure to Adequately Warn; (3) Negligence *Per Se*; (4) Negligent Misrepresentation; (5) Breach of Express Warranty; (6) Breach of Implied Warranty; (7) Strict Products Liability – Defective Design; (8) Strict Products Liability – Manufacturing and Design Defect; (9) Strict Products Liability – Failure to Adequately Warn; (10) Fraudulent Misrepresentation; (11) Deceit by Concealment and Other Unfair Practices in violation of §§ 57-12-1 – 22, New Mexico Statutes Annotated; (12) Unjust Enrichment; and (13) Loss of Consortium.

> Plaintiffs as the direct and proximate result of the wrongful conduct of the Defendants [GSK] and GSK detailer Carmen Hoss.[29] At all times material hereto, the Defendant, Carmen Hoss, worked for GSK as a detailer and was engaged in the business of promoting, marketing distributing, and/or selling Avandia in New Mexico.[30] To date, GSK and Carmen Hoss have failed to adequately warn or inform consumers, such as Plaintiffs or Plaintiffs' prescribing physicians, of the known defects in Avandia that can lead to increased risks of cardiovascular events, including but not limited to heart injury . . . .[31] GSK detailer Carmen Hoss knew or had reason to know of these dangerous defects in Avandia.[32] Defendants expressly represented to Plaintiffs and other consumers and the medical community that Avandia was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.[33]

GSK contends these allegations are inadequate because they do not include facts that would explain how Hoss knew or should have known of Avandia's purported defects. In other words, GSK argues that it is not enough under New Mexico pleading law for Plaintiffs merely to allege that Hoss knew or should have known of Avandia's defects. Defendant's position is that Plaintiffs must allege facts establishing the basis for such knowledge or responsibility. GSK does not reference the pleading standards of New Mexico or cite a case applying New Mexico law that directly supports its position.

Plaintiffs, in contrast, cite to the case St. Martin v. Wyeth, Inc.,[34] from the United States District Court for the District of New Mexico. In that case, the plaintiffs, all New Mexico citizens, sued a drug company and its sales representative in tort for injuries allegedly caused by

---

[29] Martinez Compl. ¶ 2.

[30] Id. ¶ 16.

[31] Id. ¶ 30.

[32] Id. ¶ 24.

[33] Id. ¶ 72.

[34] (Unpublished opinion) No. 03-0637 (D.N.M. Aug. 13, 2003).

certain drugs.  The defendant sales representative ("Anaya") was a New Mexico citizen, while the defendant drug company was not.  Originally filed in New Mexico state court, the action was removed by the defendants on the basis of diversity jurisdiction.  Defendants asserted removal was proper because the resident defendant Anaya was fraudulently joined and thus had no role in the jurisdictional analysis.  Considering the joinder of Anaya in light of New Mexico law, the district court disagreed.[35]  It found that the plaintiffs' complaint, while "not very fact specific," nonetheless potentially stated a "viable claim" against Anaya "by alleging that he marketed and sold [the drug] in New Mexico, he represented to physicians and pharmacies that [the drug] was safe, he knew or should have known that [the drug] was harmful, and his actions or omissions proximately caused the personal injuries suffered by [the plaintiffs]."[36]  The district court also noted that Anaya did not deny that he marketed or promoted the drug in question in New Mexico, and in particular to the plaintiffs' physicians, in his affidavit.[37]

        The Martinez Plaintiffs point out that their Complaint includes substantially the same allegations as to Hoss as those made against Anaya and found to contain sufficient factual detail in St. Martin.[38]  GSK does not dispute that point, but notes that this case involves a feature absent from St. Martin, namely an affidavit from Hoss in which she avers that everything she

---

[35] The district court applied the fraudulent joinder analysis of the Tenth Circuit Court of Appeals, which mirrors the structure of the Third Circuit fraudulent joinder analysis, but may require defendants charging fraudulent joinder to meet a more exacting standard of proof.  See Smith v. Blockbuster Entertainment Corp., 100 F.3d 878, 880 (10th Cir. 1996) (Defendant proves fraudulent joinder in Tenth Circuit through clear and convincing evidence of same).

[36] St. Martin, (Unpublished opinion) No. 03-0637, at *12.

[37] Id. at *12-*13.

[38] As in St. Martin, Hoss, in her affidavit in support of GSK's removal papers, does not directly dispute Plaintiffs' allegations.  See Declaration of Carmen Hoss ("Hoss Aff."), Not. Removal, Ex. C [Doc. No. 1 on individual case docket].

knew about Avandia came from "training materials and education" provided by GSK.[39]  GSK asserts that the affidavit cannot reasonably be reconciled with Plaintiffs' allegations elsewhere in the Complaint that GSK knew of Avandia's true dangers from tests and studies it had performed, the results of which it concealed.  GSK argues that, logically, given the Hoss affidavit and claims of GSK secrecy, Plaintiffs' allegations must supply some factual answer to the question of how Hoss knew or should have known of Avandia's purported danger.[40]  GSK's argument has some appeal – it is difficult to imagine a scenario in which a drug company divulges otherwise secret information about the dangers of its products in training materials or educational sessions given to sales representatives.  Yet, the Court notes that Hoss does not aver that the GSK materials to which she refers did not inform her of potential defects or risks of Avandia.  She is silent as to what she knew about Avandia's dangers, whatever they may be.  Ultimately, however, GSK's argument is unavailing because it requires a specificity in pleading that is not required under New Mexico's notice pleading standard.

The Supreme Court of New Mexico describes New Mexico's notice pleading standard as follows:

> The theory of pleadings is to give the parties fair notice of the claims and defenses against them, and the grounds upon which they are based. . . . However, notice pleading does not require that every theory be denominated in the pleadings – general allegations of conduct are sufficient, as long as they show that the party is entitled to relief and the averments are set forth with sufficient detail so that the parties and the court will have a fair idea of the action about which the party is complaining and can see the basis for relief.[41]

In the case of Schmitz v. Smentowski, that court applied the foregoing standard in evaluating

---

[39] Hoss Aff. ¶ 4.

[40] GSK does not address the fact that New Mexico permits parties to plead alternative theories of recovery. See Schmitz v. Smentowski, 785 P.2d 726, 730 (N.M. 1990).

[41] Schmitz, 785 P.2d at 729-30 (citations omitted).

pleadings that were challenged on sufficiency grounds. The plaintiffs, along with the trial court, took the position that the pleadings adequately stated a claim of "prima facie tort," a form of tort which had not previously been identified or adopted by the state Supreme Court. The defendant argued that it was not put on notice of the claim due to both the relative novelty of the cause of action and the minimal factual particularity found in the pleadings. The Supreme Court of New Mexico treated the arguments independently, and rejected each. As for the sufficiency of the pleadings, it found that the allegations "adequately presented" the elements of a tort claim.[42] Notably, the first and third elements of the claim alleged "knowledge" on the part of a defendant without alleging the source of the knowledge.[43] Nonetheless, as noted, the Court found that they were pleaded with sufficient particularity to satisfy New Mexico's pleading requirements.[44] In light of the articulation and application of the New Mexico notice pleading standard found in Schmitz, and guided by the evaluation of the substantively similar pleadings in St. Martin, this Court concludes that GSK is incorrect in arguing that Plaintiffs must allege not only that Hoss knew or should have known of Avandia's defects, but also how she knew. Rather, Plaintiffs' allegations as to knowledge are potentially sufficient under New Mexico law.

    That leaves the question whether it is obvious according to the settled law of New Mexico that Plaintiffs have failed to bring a viable cause of action against Hoss.[45] GSK first argues that, because Hoss was an agent of GSK acting within the scope of her employment when she promoted Avandia to New Mexico physicians, Plaintiffs cannot prevail on any claim against

---

[42] Id. at 390.

[43] Id.

[44] Id.

[45] Boyer, 913 F.2d at 111-112.

her unless they allege that she personally and intentionally participated in any wrongdoing.[46]  The argument relies on a debatable reading of the decision of the New Mexico Supreme Court in Bourgeous v. Horizon Healthcare Corp., which holds that "employees of corporations can be held personally liable when they commit intentional torts," but that corporate employees cannot be held personally liable for the tort of retaliatory discharge where no malice or wilfulness is alleged and all relevant conduct occurred within the scope and course of the employees' employment.[47]  Despite the narrowness of the case's core holding, the decision contains certain language that is susceptible to broad application, and which GSK would employ in its favor here.[48]  At least one subsequent New Mexico appellate court case interpreting Bourgeous has ruled that notwithstanding the general language it contains, the decision should not be understood to hold that corporate employees are immune from personal liability for *all* types of torts occurring within the scope and course of employment, with an exception only for intentional torts.[49]  Rather, that case held, Bourgeous announces the rule applicable to cases of retaliatory discharge, and the general rule under New Mexico law is that "agents are liable for their own

---

[46] Martinez Def.'s Resp. at 8.

[47] 872 P.2d 852, 855 (N.M. 1994).

[48] See id. at 855 ("Bourgeous sued Rodriguez and Wolf individually for the tort of retaliatory discharge . . . .  If Bourgeous was employed by [corporate defendant] Horizon, only Horizon could discharge Bourgeous, not Rodriguez and Wolf.  A corporation can act only through its officers and employees, and any act or omission of an officer or an employee of a corporation, within the scope or course of his or her employment, is an act or omission of the corporation.").

[49] Stinson v. Berry, 943 P.2d 129, 134 (N.M. Ct. App. 1997) cert. quashed 125 N.M. 148, 958 P.2d 106 (1998) ("Bourgeous essentially held that only the corporation, as employer, could be liable for a wrongful termination . . . .  Thus, although the case appears to hold that individuals acting within the scope and course of their employment for a corporation cannot beheld individually liable in tort, we believe our Supreme Court intended such holding to be limited to the particular facts of that case, where the nature of the claim resulted from the employment relationship.").

tortious acts, regardless of whether the principal is liable."[50]

Plaintiffs argue that their claims against Hoss of misrepresentation and failure to warn are potentially viable under this latter rule regarding agent liability in tort. Considering circumstances and allegations similar to those presented here, the federal district court for the District of New Mexico in St. Martin relied on the latter New Mexico appellate court ruling in finding that the plaintiffs in that case potentially stated a viable tort claim against the drug sales representative Anaya.[51]

Before this legal backdrop, the Court cannot find that Plaintiffs' claims against Hoss are frivolous "according to the settled rules" of pleading or agency law in New Mexico.[52] GSK has not satisfied its heavy burden of demonstrating otherwise. Indeed, as the parties' memoranda and the brief recitation of New Mexico case law above suggests, "settled rules" of corporate employee tort liability under New Mexico law may not yet exist. Thus, resolving "uncertainties as to the current state of controlling substantive law in favor of the plaintiff[s],"[53] as we must, the Court finds that "there is . . . a possibility that a [New Mexico] court would find that the complaint states a cause of action against" Hoss, such that the joinder of Hoss was proper and remand required.[54]

---

[50] Id. (citing Restatement (Second) of Agency §§ 343-351(1958)); see also Montano v. Allstate Indemnity, No. 99-2225, 2000 WL 525592, at *3-*4 (10th Cir. April 14, 2000) (unpublished); St. Martin, No. 03-0637, at *13 ("[i]n New Mexico, 'an agent may be held individually liable for his own tortious acts, whether or not he was acting for a disclosed principal'") (quoting Kreischer v. Armijo, 884 P.2d 827, 829 (N.M. Ct. App. 1994)).

[51] St. Martin, No. 03-0637, at *13 (citing Kreischer, 884 P.2d at 829; Stinson, 943 P.2d at 134; Montano, 2000 WL 525592, at *3-*4).

[52] Boyer, 913 F.2d at 111-112.

[53] Id. at 111.

[54] The Court notes GSK's assertion that some or all of Plaintiffs' claims, including those alleging inadequate warnings or breach of warranty, are barred by the "learned intermediary" doctrine. Under that doctrine, the duty to warn of the risks associated with a drug runs from the drug manufacturer to the physician, not the patient. The

*C.  Brown*

Plaintiff in this action ("Brown"), a citizen of North Carolina, moves for remand for lack of subject matter jurisdiction.  Brown claims the parties are not diverse because Defendant GSK is a citizen of North Carolina.

Under 28 U.S.C. 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."[55]  For present purposes, the Court evaluates party citizenship at the time this action was filed in the state court, November 10, 2008, and at the time GSK filed the removal petition, December 8, 2008.[56]  As previously noted, GSK is incorporated under the law of Pennsylvania, not North Carolina.  Plaintiff argues GSK's principal place of business is North Carolina.

---

doctrine does not apply where the warnings given are flawed.  But where adequate warnings are provided, certain courts applying the law of states that have adopted the doctrine have ruled that it does not allow for liability against drug sales representatives.  See In re Diet Drugs Prods. Liab. Litig., MDL 1203, 220 F Supp. 2d 414, 424-25 (E.D. Pa. 2002) (learned intermediary doctrine bars misrepresentation claims against drug company sales representative) (applying Mississippi law); Johnson v. Parke-Davis, 114 F. Supp. 2d 522, 524-26 (S.D. Miss. 2000) (same) (applying Mississippi law); but see Del Bosque v. Merck & Co., Inc., No 06-510, 2006 WL 3487400, at *2 (S.D. Tex. Dec. 1, 2006) (noting distinction between Texas and Mississippi law, and stating, "even assuming that the Texas learned intermediary doctrine does apply to sales representatives, when the warning to the learned intermediary – the prescribing physician – is inadequate or misleading, the manufacturer and its sales representatives remain liable for injuries sustained by the patient who is prescribed the medication.") (applying Texas law).  Not all states have adopted the learned intermediary doctrine, see State ex rel. Johnson & Johnson Corp. V. Karl, 647 S.E.2d 899, 903-05 (W.Va. 2007) (noting that twenty-two states have adopted the doctrine either by high court ruling or statute; in six states, high court dicta refers favorably to it; and in twenty-two states the doctrine has not been adopted by high court ruling or statute), and its status in New Mexico is unclear.  Compare Serna v. Roche Laboratories, Division of Hoffman-LaRoche, Inc., 684 P.2d 1187, 1189 (N.M. Ct. App. 1984) (applying principles of learned intermediary doctrine) and Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d 1174, 1214-23 (D. N.M. 2008) (upon extensive analysis, predicting that the Supreme Court of New Mexico would not adopt the learned intermediary doctrine).  Due to the doctrine's uncertain status in New Mexico, the Court cannot find that it could provide a basis for a finding of fraudulent joinder with respect to Hoss.  Because GSK's remaining arguments, noted previously, refer only to Plaintiffs' fraud and statutory claims, and so could not demonstrate a complete failure by Plaintiffs to bring a viable claim against Hoss, these arguments could not alter the disposition of this matter and will not be addressed herein.

[55] 28 U.S.C. 1332(c)(1).

[56] See Liakakos v. Cigna Corp., 704 F. Supp. 583, 586 (E.D. Pa. 1988) (citing Kerstetter v. Ohio Cas. Ins. Co., 496 F. Supp. 1305, 1307 (E.D. Pa. 1980)).

A corporation may have only one principal place of business.[57] In the Third Circuit, a corporation's principal place of business is determined through the "center of corporate activities" test, also known as the Kelly test. The Kelly test turns on the location of "the headquarters of day-to-day corporate activities and management."[58] Beyond this primary consideration, a court should consider "where Board decisions concerning overall corporate functions are reached, and also where a number of the basic functions are maintained (e.g., pension plans, insurance, loans)."[59] Of "lesser importance," but still worthy of note, are factors such as the "physical location of . . . plants and the like."[60]

In its February 25, 2009 Memorandum and Order, the Court ruled that, as of mid-2008, GSK's principal place of business was in Pennsylvania, based on an assessment of affidavits and other evidence presented by the parties. At oral argument on the instant Motion, Plaintiff's counsel averred that the only newly adduced fact that might affect the analysis of GSK's principal place of business was GSK's widely broadcast public announcement on November 5, 2008, that it would no longer maintain "headquarters" in both Philadelphia, Pennsylvania, and Research Triangle Park, North Carolina, but instead would stop referring to its Philadelphia operation as its headquarters, and use this term only as to its Research Triangle Park operation. Beyond this literally nominal change, no evidence of a change in where GSK conducts its day-to-day operations has been adduced. Rather, GSK has presented affidavit evidence reflecting, in sum, that at the relevant times, GSK's corporate activities were centered

---

[57] Kelly v. U.S. Steel Corp., 284 F.2d 850, 853 (3d Cir. 1960).

[58] Id. at 854.

[59] Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp., 461 F.2d 1140, 1143 (3d Cir. 1972).

[60] Id.

in Philadelphia, as previously found by the Court.[61]   It may be that it is only a matter of time until GSK shifts the preponderance of its operational and management functions to its North Carolina headquarters.  A corporation's principal place of business can surely change over time.  As for GSK's principal place of business in November and December, 2008, however, the Court finds that it was Pennsylvania, such that, in all respects, GSK is a Pennsylvania citizen in this action and remand is not warranted.

### III.  CONCLUSION

For the foregoing reasons, the Motion to Remand in the Martinez case from New Mexico will be granted, and the Motion to Remand in the Brown case from North Carolina, denied.  An appropriate Order follows.

---

[61] Def.'s Resp. to Mot. Remand in Brown, Ex. C (Declaration of William J. Mosher) [Doc. No. 339 on the MDL Master Docket].